IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Daniel T. Lohan,      :
    Plaintiff     :  Civil Action 2:06-cv-1043

  v.           :  Judge Holschuh

Michael J. Astrue,      :  Magistrate Judge Abel
Commissioner of Social Security,
    Defendant    :

**REPORT AND RECOMMENDATION**

Plaintiff Daniel T. Lohan brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his application for Disability Insurance Benefits and Supplemental Security Income

benefits.  This matter is before the  Magistrate Judge for a report and recommendation

on the parties' cross-motions for summary judgment.

<u>Summary of Issues</u>.

Plaintiff argues that the decision of the Commissioner denying benefits should be

reversed because:

- The administrative law judge erred in finding that plaintiff could perform light work;
- The administrative law judge erred in making determinations as to the plaintiff's pain and physical capacity without the assistance of a medical expert; and,
- The administrative law judge erred in failing to find that plaintiff's impairment equals Listing 1.04C.

<u>Procedural History</u>.  Plaintiff Daniel Lohan filed his application for disability

insurance benefits on June 10, 2004, alleging that he became disabled on September 30,

2002, at age 42, by degenerative disc disease, scarring from multiple surgeries, sciatic nerve problem, and problems with the L4 and L5 discs . (R. 50-52, 70.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On February 9, 2006, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 358.) A vocational expert also testified. On June 30, 2006, the administrative law judge issued a decision finding that he was not disabled within the meaning of the Act. (R. 21.) On October 13, 2006, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 4-6.)

**Age, Education, and Work Experience.** Daniel Lohan was born March 18, 1960. (R. 50.) He has a high school education . (R. 75.) He has worked as a brick layer, equipment operator, equipment runner, and a grass cutter. He last worked September 20, 2002. (R. 71.)

**Plaintiff's Testimony.** The administrative law judge fairly summarized Lohan's testimony as follows:

> [A]lthough he gets good relief from his trigger point injections, he has to be carful not to overexert himself after receiving them or he will be "back in bed."

> [D]epression kept him from wanting to go place or do anything. Yet in contrast, the claimant attributed most of his limitations to his physical maladies. He stated that the 15 mile drive to the hearing, plus sitting in the hearing made for a difficult afternoon. The claimant stated that he is unable to shop for groceries longer than 20

2

minutes or stand unassisted more than five minutes. He estimated that he could walk no more than 50 yards before his pain bothered him too much to continue.

[H]e was unable to take car trips or go on vacation because he was unable to sit in the car. Although the claimant sated that he had his two younger sons, age eight and 12, every weekend and all summer, he indicated that he doesn't take them places very often. He stated that he takes them fishing on his farm instead.

[H]e sees his sister and mother on Sundays, but did not socialize before or after church. He stated that friends stop and help him out occasionally and once in a while he goes out to eat with his family. The claimant testified later that he found it hard to get along with others.

(R. 15-16.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

A December 14, 2000 MRI of the lumbar spine showed post-operative scarring at the L4-5 level with transversing L5 nerve roots, which were greater on the right than on the left. There was no evidence of disc re-herniation. There was a 5 mm central, subligamentous disc herniation present at the L5-S1 level without impingement of the thecal sac. Disc dehydrations were present in the lower lumbar spine. (R. 113.)

A February 13, 2001 myelogram and CAT scan showed minimal disc herniation centrally and on the left at L4-5. There was minimal effacement of the caudal sac and the left L5 nerve root. No other significant abnormalities were detected. (R. 114-15.)

3

Matt El-Kadi, M.D., Ph.D. On February 20, 2001, Dr. El-Kadi examined Lohan. Lohan presented with continued complaints of chronic lower back pain that occasionally radiated into his right lower extremity with a tingling and burning sensation laterally to the dorsal portion of the foot. He also had numbness in his right lateral foot, including the dorsal portion of his foot.

On physical examination, Lohan had tenderness in his lumbosacral spine region in the paravetebral muscular area. His motor strength examination of bilateral lower extremities was intact. Sensory examination revealed decreased sensation in the right medial shin only. Reflexes were somewhat decreased in his bilateral patellar response. He opined that plaintiff was suffering from failed back syndrome. (R. 205-06.)

A January 3, 2003 MRI of the lumbar spine revealed:

1.      L5-S1 central disc bulge or focal contained disc herniation with compromise of the proximal right S1 nerve root.

2.      L4-5 circumferential disc bulge with right neuroforaminal encroachment and compromise of the exiting right L4 nerve root.

3.      L3-4 minor annular disc bulge without associated spinal stenosis.

4.      The remaining lumbar intervetebral discs were unremarkable.

5.      Facet joint degenerative changes.

(R. 116-117.)

Mountaineer Pain Relief and Rehabilitation Center. On January 9, 2003, Michael Shramowiat, M.D., examined Lohan at the request of Dr. Ashcraft to evaluate his

4

occupational injury sustained on August 20, 1993. Lohan reported that he had been employed as a heavy equipment operator at the time of the injury. He slipped and fell backwards onto a rock pile about 12 to 15 feet below. He experienced a sudden onset of severe, low back pain with pain in his right leg. He underwent a lumbar surgery six months after the injury occurred. Physical therapy and epidurals failed to provide him with relief.

Plaintiff presented with complaints of constant low back pain with varying intensity. Prolonged sitting worsened the pain. He experienced intermittent pain radiating to the lateral to posterolateral aspect of the right lower extremity to the right foot. He also had intermittent pain radiating into the left hip, beginning within the past 12 months.

On physical examination, Lohan's gait was antalgic on the right and was shortened. He performed heel walking and toe walking with reported increase in severity of lumbar pain as well as radicular pain in the right lower extremity with heel walking. Range of motion of the lumbar was mildly restricted with flexion, extension, left and right lateral bends, and left and right rotation. He reported increased pain with left and right lateral bends. Lumbar extension mildly decreased the severity of his pain. Sensation to light touch was diminished on the lateral right thigh and throughout the tibialis anterior region on the right. Bilateral lower extremity was 5/5. DTRS at patella were 2+/4 bilaterally, and his Achilles was 1+/4 bilaterally. Straight leg raising was strongly positive on the right and negative on the left, although it produced moderate

lower lumbar discomfort. His hips had moderate tenderness over greater trochanteric bursa bilaterally. There was mild restriction of the internal and external rotation of the hips bilaterally. Internal rotation of the right hip produced right gluteal discomfort. Dr. Shramowiat diagnosed failed back syndrome and lumbar radiculopathy. (R. 158-60.)

A January 3, 2003 MRI scan of the lumbar spine revealed a L5-S1 central disc bulge or herniation with compromise of the proximal right S1 nerve root. He also had a annular bulge at L3-4. (R. 154.) On January 27, 2003, Lohan's bilateral lower strength was 5/5. Sensation was grossly intact and symmetrical for light touch in both lower extremities. Deep tendon reflexes were 2+ at the patella and Achilles bilaterally. Straight leg raising was weakly positive bilaterally. Dr. Shramowiat recommended a follow up EMG of the bilateral lower extremities because Lohan had pain radiating into bilateral lower extremities. (R. 157.)

February 6, 2003 electrodiagnostic studies showed a right S1 radiculopathy, chronic bilateral tibial neuropathy. Lohan's right tibial motor latency was prolonged, and nerve conduction velocity was slowed. The left tibial motor latency was prolonged. The left sural sensory snap amplitude was prolonged. The needle EMG of the lower extremities was normal. (R. 153-56.)

On March 7, 2003, Lohan returned for a follow-up appointment with continued complaints of low back pain. On physical examination, his right lower extremity strength tibialis anterior and extensor hallucis longus was 4/5. Sensation was diminished in the right lower extremity L5 nerve root distribution. DTRs were 2+ at the

6

patella and Achilles bilaterally. Straight leg raising was positive in the right lower extremity. The left lower extremity strength was 5/5. Sensation was normal. He had moderate to severe pain with palpation in the lumbar paravertebral region bilaterally. He had numerous palpable tender points. (R. 151.)

On April 7, 2003, Lohan reported that the Methadone provided him with pain relief without side effects. The injections had also provided good relief. He complained of pain in the bilateral groin. (R. 150.) On July 1, 2003, Lohan reported that he was still experiencing severe pain at night and difficulty sleeping. (R. 147.)

On December 11, 2003, Lohan complained of an exacerbation of his back pain. He said that he felt a pop in his back and increased pain down the right leg. (R. 143.)  On January 29, 2004, Lohan reported that he had been in a car accident resulting in neck pain and increased back pain. Dr. Shramoviat continued adjusting Lohan's medication regimen and increased the frequency of his trigger point injections, but Lohan continued to experience muscle tightness, back pain, and radiculopathy. In August 2004, Dr. Shramowiat prescribed 20 mg of Methadone every eight hours and Vicodin for breakthrough pain. Lohan continued treatment with Dr. Shramowiat until he was discharged from the practice for violation of the narcotic agreement on October 13, 2004 when Lohan had tested negative for Methadone on a urine drug screen. (R. 129.)

Wheeling Hospital. On January 28, 2004, Lohan was injured in a motor vehicle accident. (R. 118-28.) An x-ray of the lumbar spine showed narrowing of the L4-5 disc space with slight posterior subluxation of L4 onto L5. (R. 127.)

Khalid Darr, M.D. On June 29, 2004, Dr. Darr performed a independent medical evaluation. Lohan presented with complaints of a constant, dull low back pain and a sharp, stabbing low back pain going into his right leg and foot. His pain was aggravated by prolonged standing, sitting, walking, and performing his daily activities. Upon physical examination, Dr. Darr found no muscle guarding, spasm, or tenderness. Toe and heel walking, station, and gait were within normal limits. Reflexes were equal bilaterally and symmetrically. There was full range of motion. Straight leg raises were 70 degrees bilaterally. Motor and sensory were intact, and no muscle atrophy was noted. There was no bowel or bladder dysfunction or radiculopathy.

Dr. Darr opined that Lohan had not reached maximum medical improvement because he continued to complain of a lot of pain. Dr. Darr stated that Lohan's subjective complaints were not supported by his objective findings, and he recommended that plaintiff be seen by a psychiatrist to evaluate his symptoms of depression. (R. 202-04.)

Jerry McCloud, M.D. On July 29, 2004, Dr. McCloud reviewed the evidence of record and completed a physical residual functional capacity assessment. (R. 175-79.) He opined that plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. He could stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday. He could sit with normal breaks for a total of about 6 hours in an 8-hour workday. (R. 176.)  On March 10, 2005, this opinion was reaffirmed by Paul T. Heban, M.D. (R. 181.)

8

Peter Perzanowski, D.C. On November 30, 2004, Dr. Perzanowski, a chiropractor, examined plaintiff. (R. 165-68.) He noted that Lohan's prognosis was poor with regard to a complete recovery, but that favorable with respect to decreasing pain and increasing his range of motion. On January 7, 2005 Dr. Perzanowki noted that Lohan moved with a guarded gait. He was attempting to get Lohan into a pain management program. He reported that plaintiff was limited from walk or standing for very long. (R. 165.)

Trinity Pain Center. On February 17, 2005, Dr. Carolina Torres examined Lohan. Lohan reported that he had a diagnosis of failed back syndrome and that he experienced continuous low back pain. Lohan limped and was obviously distressed. Lohan was advised to throw away all of his previous pain medications, and Dr. Torres prescribed Elavil, methadone, and Robaxin. Dr. Torres noted that there was lots of spasm of the muscles alongside the incision in the low back. She suggested a trigger point injection in six weeks after he received authorization form Workers' Compensation. Dr. Torres diagnosed lumbar sprain and strain and failed back syndrome. (R. 325.)

On March 10, 2005, Lohan reported that the medications helped him very much and improved his ability to sleep. He received trigger point injections. (R. 324.) On June 1, 2005, Dr. Torres noted that plaintiff had continued to improve and that he was gaining weight. With methadone, Lohan reported that his pain was reduced to a three on a ten-point scale. (R. 323.)

9

On October 14, 2005, Amy Dorsey, a certified registered nurse practitioner dictating for Dr. Roig, noted that Lohan continued to have low back pain which radiated to the bilateral legs, more so on the right and the lateral aspect of with a burning sensation. His gait was steady. He rated the pain as a 3 on a ten-point scale. Lohan had tolerated the trigger point injections quite well. Lohan was prescribed Flexeril for occasional muscle spasms and methadone. (R. 321-22.) On December 9, 2005, Dorsey noted that Lohan's gait was steady. (R. 319.) There was tenderness in the bilateral paravertebral lumbar region in the quadratus lumborum muscle group area. There seemed to be areas amenable to injection. Flexion of the back did not decrease discomfort. He was diagnosed with lumbar failed back syndrome and myofascial pain. (R. 319.)

**Psychological Impairments.**

Albert L. Ghobrial, M.D. On January 27, 2001, Lohan was admitted to the Ohio Valley Medical Center for depression and suicidal ideation. (R. 183-201.)

David Bousquet, M.Ed. On February 9, 2005, Mr. Bousquet, a psychologist, evaluated Lohan at the request of Disability Determination. On evaluation, Lohan was able to maintain eye contact. He was responsive and presented with a neat and clean appearance. He had never been fired from any jobs and reported no difficulty relating to supervisors or co-workers. Lohan appeared anxious, restless, and fidgety. He sat on the edge of his chair and exhibited pain behavior, including facial reddening and grimacing. He did not exhibit any tendencies to deliberately exaggerate or minimize his

10

problems. Lohan appeared to have some problems maintaining attention and concentration during the evaluation, and Bousquet opined that his pain distracted him.

Plaintiff's mood was anxious and sad. He reported diminished appetite, and he had lost over 60 pounds. He had difficulty falling asleep because of pain. He experienced feelings of hopelessness and uselessness. He had problems with his energy and motivation and felt guilty and worthless. Lohan reported that he had to force himself to engage in activities, noting that much of the time he did not do anything. He reported having panic attacks in his sleep. He reported waking up and not being able to get any air. He also woke up sweaty and agitated. When he felt nervous, he experienced headaches, a rapid heart rate, nausea, and the inability to focus.

Lohan reported that he went fishing with sons, watched action and adventure programs, westerns, and the History and Discovery channels on television. He attended church regularly and visited his mother and brother, and they visited him.

Bousquet diagnosed Lohan with dysthymic disorder, anxiety disorder, and a somatoform disorder. He assigned a Global Assessment Functioning ("GAF") score of 60, indicating moderate symptoms. (R. 169-74.)

Cheryl Benson-Blankenship, Ph.D. On July 8, 2005, Dr. Blankenship performed a psychological examination at the request of the Bureau of Workers' Compensation. (R. 333-35.) Lohan's daily activities including rising early in the morning and watching television. He performed household tasks, played with his children, and did some yard work. He reported ongoing chronic pain, which interfered with his tasks at times.

11

Lohan reported irritability, difficulty sleeping, low self-esteem and feelings of worthlessness. He reported past use of cannabis and alcohol at varying levels. Lohan was oriented in all three spheres. There was no current suicidal ideation, although he reported a history of both active and passive suicidal ideation. There was no evidence of psychosis or significant anxiety.  His insight and judgment were fair. Lohan reported becoming easily frustrated. His weight fluctuated, and his appetite was inconsistent. He also indicated a tendency to socially isolate himself. He felt hopeless and had diminished energy.

The results of the MMPI-2 revealed a profile of a person who tends to exhibit a pattern of chronic psychological maladjustment. Individuals with this profile have feelings of intense stress and complain of physical problems. They experience emotional turmoil. There may be elevation of anger, a tendency to introversion, noticeable depressed mood, and low morale.

Dr. Blankenship diagnosed aggravation of pre-existing major depressive disorder, chronic, severe. She deferred making a diagnosis on Axis II. She assigned a current GAF score of 55 and a past GAF score of 50. (R. 335.)

<u>Administrative Law Judge's Findings</u>.

1.    The claimant met the insured status requirements of the Social Security Act through December 31, 2004.

2.    The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.      The claimant has the following severe impairments: status post low back laminectomy at the L4-5 level; degenerative disc disease of the lumbar spine with radiculopathy and depression (20 CFR 404.1520(c) and 416.920(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work limited to simple routine one to three step tasks that requires only occasional contact with the general public with an option to sit or stand after 30 minutes; sitting up to six hours in an eight hour workday, no more than 30 minutes continuously; standing and walking in combination up to six hours in an eight hour workday no more than 30 minutes continuously.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on March 18, 1960 and was 43 years old on the alleged disability onset date, which is defined as a younger individual 18-44 (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a "disability," as defined in the Social Security Act, from September 30, 2002 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 15-21 (analysis omitted).)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments**.  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred in finding that plaintiff could perform light work. Lohan argues that he is not capable of performing a substantial amount of light work activities. He maintains that he cannot stand or walk off

14

and on for 6 hours in an 8-hour workday. Dr. Perzenowski concluded that Lohan could not walk or stand for an extended period of time. Lohan testified that he has to leave the supermarket within 20 minutes. Lohan also testified that he cannot sit for longer than 10 minutes preventing him from performing either light or sedentary work.

- The administrative law judge erred in making determinations as to the plaintiff's pain and physical capacity without the assistance of a medical expert. Lohan maintain that the evidence of record supports his allegations of pain, and the administrative law judge improperly substituted his own beliefs and opinions when he concluded that plaintiff was exaggerating. Lohan argues that the administrative law judge improperly relied on a few statements made by Lohan over a thirteen year period of time rather than all the evidence of record in accordance with SSR 96-7p.

- The administrative law judge erred in failing to find that plaintiff's impairment equals Listings 1.00B and 1.04C. With respect to Listing 1.00B, Lohan maintains that plaintiff is unable to ambulate effectively and that he is unable to walk a block at a reasonable pace on rough or uneven surfaces. The furthest he can walk is 50 yards before having to rest, and he cannot walk more than 20 minutes on a hard surface without experiencing pain. Lohan also argues that he meets Listing 1.04C because he has degenerative disc

disease and spinal stenosis and nerve root is compromised as evidence by his inability to sit stand for extended periods of time.

**Analysis**.

Plaintiff's Ability to Perform Light Work. The administrative law judge concluded that plaintiff retained the residual functional capacity

> to perform light work limited to simple routine one to three step tasks that requires only occasional contact with the general public with an option to sit or stand after 30 minutes; sitting up to six hours in an eight hour workday, no more than 30 minutes continuously; standing and walking in combination up to six hours in an eight hour workday no more than 30 minutes continuously.

(R. 19.)  The administrative law judge relied on the opinion of the state agency physician who concluded that plaintiff was able to perform work-related activities, although the administrative law judge concluded that plaintiff had more restrictive exertional and functional limitations. (R. 20.) Dr. Jerry McCloud reviewed the evidence of record and concluded plaintiff could occasionally lift and/or carry fifty pounds and frequently lift and/or carry twenty-five pounds. He could stand and/or walk with normal breaks for a total of about 6 hours in an 8-hour workday. He could sit with normal breaks for a total of about 6 hours in an 8-hour workday. (R. 176.) Plaintiff relies on the opinion of Peter E. Perzanowski, D.C., a chiropractor.  A chiropractor, however, is not a medical doctor, and his opinion is entitled to less weight than that of a physician. See 20 C.F.R. §§ 404.1513(e); 46.913(e)(3).  Consequently, there is

16

substantial evidence in the record supporting the administrative law judge's conclusion that Lohan could perform a reduced range of light work.

     <u>Credibility Determinations: Controlling Law</u>. Pain is an elusive phenomena. Ultimately, no one can say with certainty whether another person's subjectively disabling pain precludes all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity <u>by reason of any medically determinable or mental impairment</u> which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

     Under the provisions of 42 U.S.C. §423(d)(5)(A):

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide:

> (a) *General.*  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work.  We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.  However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.  In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.  (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.)  We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.

20 C.F.R. §404.1529(a).

In *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986) the Sixth Circuit established the following test for evaluating complaints of disabling pain. First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

> examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853. Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987).

Credibility Determination: Discussion. The administrative law judge believed that plaintiff was exaggerating his symptoms and pointed to Dr. Torres' observation that Lohan's gait was steady. In October 2005, Lohan described his pain as a two on a ten-point scale. (R. 19.) Lohan argues that the administrative law judge erred when he did not consult with a medical expert. However, the inconsistencies between Lohan's testimony and the medical evidence of record did not require consultation with a medical expert. Dr. Roig observed that plaintiff had a steady gait, and Dr. Perzanowski indicated that he did not use an ambulatory aid. (R. 165.) Lohan testified that he used a cane most of the time. The administrative law judge also found it significant that although he continued to complain of pain and was prescribed Methadone, Lohan

19

tested negative for Methadone. (R. 18.)  As a result, there is substantial evidence in the record supporting the administrative law judge's credibility assessment.

Listing 1.00. Lohan argues that because he is unable to walk a block at a reasonable pace on rough or uneven surfaces, he is unable to ambulate effectively. Lohan appears to be misconstruing the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00(B)2(b):

> b. What We Mean by Inability to Ambulate Effectively
> . . .
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. *Therefore, examples of ineffective ambulation include, but are not limited to*, the inability to walk without the use of a walker, two crutches or two canes, *the inability to walk a block at a reasonable pace on rough or uneven surfaces*, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 CFR Pt. 404, Subpt. P, App. 1. Listing 1.00(B)2(b)(2) (emphasis added).  However, subsection 1.00(B)2(b)(1)[1] defines effective ambulation as "having insufficient lower

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00(B)2(b)(1) states:
b. What We Mean by Inability to Ambulate Effectively
(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an

extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." The term, "ineffective ambulation" was defined to require the use of hand-held assistive devices. Many people may require the use of such devices but still be able to walk without the use of a walker, two crutches or two canes.

There is no evidence that Lohan has limited functioning of both upper extremities as a result of using assistive devices or that he is unable to walk without the use of a walker, two canes, or two crutches. Instead, at times, Lohan's gait was described as steady and he only occasionally used a cane. Because there is substantial evidence supporting the administrative law judge's decision that plaintiff did not meet the criteria for ineffective ambulation, he does not meet or equal Listing 1.04, which provides in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> . . .
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, *and resulting in inability to ambulate effectively, as defined in 1.00B2b.*

20 C.F.R. Pt. 404, Subpt. P, App. 1.

---

exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
20 C.F.R. Part 404, Subpt. P, Appx. 1, Listing 1.00(B)2(b)(1).

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel
United States Magistrate Judge