IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Daniel Lohan, | : | |
| Plaintiff | : | Civil Action 2:06-1043 |
| v. | : | Judge Holschuh |
| Michael J. Astrue, Commissioner of Social Security, | : | Magistrate Judge Abel |
| Defendant | : | |

**ORDER**

This matter is before the Court on plaintiff Daniel Lohan's objections to Magistrate Judge Abel's October 16, 2007 Report and Recommendation.  The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the administrative law judge's determination that plaintiff Daniel Lohan is not disabled within the meaning of the Act.  The Court further finds for the reasons set out below that plaintiff's objections to the Report and Recommendation are without merit.

Plaintiff argues that the administrative law judge erred in failing to find that plaintiff meets Listing 1.04C and in failing to find his subjective complaints of pain credible. Lohan argues that Magistrate Judge erred when he concluded that there was substantial evidence supporting the administrative law judge's finding that plaintiff exaggerated his symptoms because he relied on the one time consultative examiner's

observation that Lohan's gait was steady. The Magistrate Judge also found the support for the administrative law judge's credibility determination based on alleged inconsistencies between Lohan's testimony and the medical evidence of record. Lohan maintains that symptoms fluctuate over time, and the adjudicator must review the record to determine whether there are explanations for the inconsistencies. Lohan also relies on the results of a MMPI-2, which did not show any evidence of malingering or exaggeration of symptoms.

With respect to the administrative law judge's credibility assessment, the Magistrate Judge stated:

> The administrative law judge believed that plaintiff was exaggerating his symptoms and pointed to Dr. Torres' observation that Lohan's gait was steady. In October 2005, Lohan described his pain as a two on a ten-point scale. (R. 19.) Lohan argues that the administrative law judge erred when he did not consult with a medical expert. However, the inconsistencies between Lohan's testimony and the medical evidence of record did not require consultation with a medical expert. Dr. Roig observed that plaintiff had a steady gait, and Dr. Perzanowski indicated that he did not use an ambulatory aid. (R. 165.) Lohan testified that he used a cane most of the time. The administrative law judge also found it significant that although he continued to complain of pain and was prescribed Methadone, Lohan tested negative for Methadone. (R. 18.)

Report & Recommendation at p. 19. An administrative law judge's finding with respect to the credibility of a claimant appearing before him is accorded a high standard of deference. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a

2

witness's demeanor while testifying.") A reviewing court is limited to evaluating whether or not the administrative law judge's explanations for partially discrediting a claimant are reasonable and supported by substantial evidence in the record. *Id.*

The administrative law judge's credibility determination with respect to Lohan's testimony regarding his symptoms is reasonable. Dr. Darr, the consultative examiner, found no objective support for Lohan's subjective complaints, and on examination, Lohan's gait and toe and heel walking were within normal limits. (R. 18, 204.) Following trigger point injections, Dr. Torres also reported that Lohan walked with a steady gait. (R. 19, 321.) The administrative law judge concluded that:

> The claimant has exaggerated his symptoms and limitations. The claimant testified that he uses a cane "most of the time." Dr. Torres observed that the claimant's gait was "steady." She noted no assistive device on examination. Initially, the claimant reported sleeping well, later at the hearing the claimant testified that he did not sleep well or long due to pain.
> The claimant described the pain in his back as feeling like a "knife bring twisted around." Dr. Torres stated in October 2005 that the injections in tandem with medications had decreased his pain to a two on a scale of zero to 10. Dr. Torres added that the injection had helped him "a great deal" in decreasing his discomfort (Exhibit 12F). The claimant testified at the hearing that his pain is so severe some days he vomits. In October 2005 and again in December 2005 the claimant denied nausea or vomiting to Dr. Torres (Exhibit 12F).
> The claimant has not been consistent in his statements to his examining physicians. The claimant denied ever abusing alcohol and drugs to Dr. Bousquet in February 2005 (Exhibit 7F). As noted previously, the claimant tested positive for marijuana in October 2004. While being treated by Dr. Shramowiat the claimant was not taking his prescribed Methadone, but continued to complain of severe pain (Exhibit 5F).

3

(R. 19-20.) Consequently, the Magistrate Judge did not err when he concluded that there is substantial evidence supporting the administrative law judge's credibility assessment.

Plaintiff also argues that the Magistrate Judge erred when he construed Listing §§ 1.00B and 1.04C as defining "ineffective ambulation" to require the use of hand-held assistive devices. Plaintiff argues that the Magistrate Judge's interpretation of Medical Listing 1.02 is incorrect and that such interpretation imposes requirements on plaintiff not supported by the regulations. Plaintiff maintains that he would not be able to walk a block at a reasonable pace on a rough or uneven surface, and as a result, he meets the definition of ineffective ambulation outlined 20 C.F.R. Pt. 404, Subpt. P, App, 1 Listing 1.00(B)2(b)(2). Plaintiff contends that the Magistrate Judge improperly found that there is an absolute requirement that assistive devices be used and be the basis for that inability to walk the required one block. Instead, plaintiff argues that the regulation specifically gives examples of ineffective ambulation that do not require the use of assistive devices.

Listing 1.00(B)2(b)(1) states:

> b. What We Mean by Inability to Ambulate Effectively
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. *(Listing 1.05C is an exception*

4

> *to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)*

20 C.F.R. Part 404, Subpt. P, Appx. 1, Listing 1.00(B)2(b)(1) (Emphasis added.).[1] Although the regulation provides that *generally* ineffective ambulation means having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive devices that limits the functioning of both upper extremities, the regulation further provides an example of such an exception.  If the individual has the use of only one upper extremity due to the amputation of a hand, then she is exempted from the requirement that she uses hand held devices which limit both upper extremities.  This example does not support plaintiff's contention that the use of assistive devices is not required by the regulation.

The Magistrate Judge correctly noted that there is no evidence that Lohan has limited functioning of both upper extremities as a result of using assistive devices or that he is unable to walk without the use of a walker, two canes, or two crutches. Instead, at times, Lohan's gait was described as steady and he only occasionally used a cane. Because there is substantial evidence supporting the administrative law

---

[1] 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.05(C) states:
1.05 Amputation (due to any cause).
. . .
C. One hand and one lower extremity at or above the tarsal region, with inability to ambulate effectively, as defined in 1.00B2b. . . .

5

judge's decision that plaintiff did not meet the criteria for ineffective ambulation, he does not meet or equal Listing 1.04.[2]

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation. Plaintiff's motion for summary judgment is **DENIED**. Defendant's motion for summary judgment is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant. This action is hereby **DISMISSED**.

Date: February 22, 2008            **/s/ John D. Holschuh**
                                   John D. Holschuh
                                   United States District Judge

---

[2] Listing 1.04 provides in pertinent part:
   1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
   . . .
   C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, *and resulting in inability to ambulate effectively, as defined in 1.00B2b.*
20 C.F.R. Pt. 404, Subpt. P, App. 1 (Emphasis added.) .